INHABITANTS OF MILTON *vs.* AUDITOR OF THE COMMONWEALTH
& another.

Suffolk.    October 20, 1922. — February 27, 1923.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Moth Suppression. Gypsy Moth. Brown Tail Moth. State Forester. Statute,*
Construction. *Mandamus. Words,* "Shall."

The word "shall" in the provision of G. L. c. 132, § 14, that "the Commonwealth
shall reimburse" certain cities and towns to the extent of fifty per cent of an
amount beyond $5,000 spent for gypsy and brown tail moth suppression, is
imperative and not permissive.

There is no statutory provision indicating that the State forester is given power to
regulate the maximum of expenditure by municipalities for moth extermination.

While no payments can be made by the Commonwealth to a municipality under
G. L. c. 132, § 14, in excess of appropriations made therefor by the General
Court, nevertheless the auditor of the Commonwealth and the State forester
must examine and pass upon accounts and vouchers presented to them by a
municipality as the basis of a claim under the statute.

It being the function of the writ of mandamus to compel public officers to apply
their faculties to the performance of required duties without directing the
particular action to be taken, a petition may be maintained by a municipality,
which seeks reimbursement from the Commonwealth under G. L. c. 132, § 14,
for a writ of| mandamus requiring the auditor of the Commonwealth and the
State forester to examine accounts and vouchers presented to them as the
basis of a claim for such reimbursement and, if found correct, to approve them.

PETITION, filed in the Supreme Judicial Court for the county of
Suffolk for a writ of mandamus directing the auditor of the Com-
monwealth and the commissioner of conservation and State
forester "to accept and receive itemized accounts and vouchers
from the petitioner" as to amounts expended by it in excess of
$5,000 for the suppression of gypsy and brown tail moths, "to
determine the correctness thereof and to approve the same."

The petition was reserved by *Jenney,* J., upon the pleadings and
an agreed statement of facts for determination by the full court.
Material facts are described in the opinion.

The case was submitted on briefs.

*L. Bryant,* for the petitioner.

*J. W. Allen,* Attorney General, & *A. C. York,* Assistant Attorney
General, for the respondents.

RUGG, C.J.   This is a petition for a writ of mandamus by the town of Milton against the auditor of the Commonwealth and the commissioner of conservation and State forester.   Salient facts are that the petitioner is a town in which one twenty-fifth of one per cent of the valuation of its real and personal property is more than $5,000; and that during the year ending November 30, 1920, it expended within its limits more than $5,000 in suppressing gypsy or brown tail moths on lands other than those under the control of the Commonwealth or in private ownership, save as otherwise provided in G. L. c. 132; and that such expenditure was made through its duly appointed superintendent under the advice and general direction of the State forester as to the method pursued.   In January, 1920, the State forester notified the selectmen of the petitioner that it might be required to expend $5,000 in moth suppression for the year ending November 30, 1920, adding, "Should any further expenditure be necessary, the matter will be taken up with you at a future date."   No further communication was had by the State forester with officers of the plaintiff as to the amount required to be expended, but the town expended a much larger sum.

It is provided by G. L. c. 132, § 14 (which in this particular is the same in substance as the pre-existing statute and to which reference is made for convenience) that "When any city or town in which one twenty-fifth of one per cent of the assessed valuation of real and personal property is more than five thousand dollars shall have expended within its limits city or town funds to an amount in excess of five thousand dollars in any one year ending November thirtieth in suppressing gypsy or brown tail moths, the Commonwealth shall reimburse such city or town to the extent of fifty per cent of such excess above said five thousand dollars."

The words of this section of the statute, according to the common and approved use of the language, are unmistakable in their mandate that such reimbursement shall be made by the Commonwealth.   In its ordinary signification "shall" is imperative and not permissive, although it may have the latter meaning where required by the context.   *Rea* v. *Aldermen of Everett,* 217 Mass. 427, 430.   *Bay State Street Railway* v. *Woburn,* 232 Mass. 201. There are no provisions in other sections of the statute which limit

the apparently explicit direction that the payments must be made
by the Commonwealth as specified in § 14. An examination of the
history of this section from its first enactment in St. 1905, c. 381,
§ 4, fails to reveal a legislative purpose to soften its absolute
requirements for payment by the Commonwealth.

There are reasons of considerable force leading to the belief that
the word "shall" was used in § 14 in its imperative sense. It is
common knowledge that the gypsy and brown tail moths are
pests of such destructive nature as to be likely, if unrestrained, to
strip all verdure from trees and shrubs throughout the Common-
wealth and to cause incalculable loss and irreparable damage. The
gypsy moth, confined at first to a restricted area, has gradually
spread so that considerable sections of the Commonwealth are now
infected. Its devastations are not confined by municipal boun-
daries. Since the first by St. 1890, c. 95, enormous appropriations
in the aggregate have been made by the Commonwealth for their
suppression. No cheap and effective means have yet been dis-
covered for destroying them or restricting their ravages. It would
be natural for the Legislature to avail itself of every resource for
diminishing the burden of general taxation for this purpose. One
rational method would be to stimulate the municipalities especially
affected and so disposed to take measures for their relief beyond
those demanded of all. To this end the offer of partial reimburse-
ment is held out by the Commonwealth in said § 14 to encourage
towns of the classes there established to make expenditures, in
addition to the minimum absolutely required by law, for the
extermination of these enemies of the public welfare.

There is nothing in the statute which indicates that the State
forester is given power to regulate the maximum of expenditure
by municipalities for moth extermination. The authority con-
ferred upon the forester by § 11 of said c. 132, subject to the
approval of the Governor to "make rules and regulations governing
all operations by towns or persons for the purpose of suppressing"
these moths appears to be confined to the practical systems and
ways to be pursued rather than amounts to be expended. If it
had been the purpose of the General Court to vest in any State
officer a general power of restriction as to the amounts which cities
and towns may expend for moth suppression as a condition for
seeking partial reimbursement from the Commonwealth under

§ 14, apt words to express that purpose would have been inserted in the statute.

The argument of inconvenience is the one chiefly urged by the Attorney General. Whatever its force may be thought to be, it cannot overcome the unmistakable words of the statute.

While no payments can be made under § 14 in excess of appropriations made therefor by the General Court, we are of opinion that the respondents are required to examine and pass upon the accounts and vouchers presented to them by the petitioner.

The aim of the petition is to compel the respondent State officers to examine and approve, if found correct, the itemized accounts and vouchers submitted to them by the petitioner showing the definite amounts expended by it for the suppression of the gypsy and brown tail moths. G. L. c. 132, § 14. Although this may involve the exercise of sound judgment and discretion in some particulars, it is the function of the writ of mandamus to compel public officers to apply their faculties to the performance of required duties without directing the particular action to be taken. *Crocker* v. *Justices of the Superior Court*, 208 Mass. 162. *Knights* v. *Treasurer & Receiver General*, 236 Mass. 336. The writ may be maintained on the facts here disclosed.

*Peremptory writ to issue.*