## STATE VS. SNYDER

(No. 1139, January 22nd, 1924; 222 Pac. 40.)

STATES—STATUTORY CONSTRUCTION—TAXATION—GENERAL SCHOOL TAX IS COUNTY TAX—SPECIAL SCHOOL TAX NOT COUNTY TAX—CONSTITUTIONAL LAW.

1. The term "county tax" as used in Comp. St. § 2753, as amended by Laws 1921, c. 50, § 1, adding paragraph 5 thereto, providing that the state treasurer shall reimburse counties for revenue lost because of exempting property of war veterans, refers only to taxes levied for county purposes, as distinguished from other governmental purposes, and does not include state taxes.

2. The general school tax levied by a county provided for by Comp. St. 1920, § 2752, though not a tax strictly for county revenue, *held* to be a "county tax" within section 2753, as amended by Laws 1921, c. 50, § 1, providing for reimbursing counties for loss of revenue because of exempting property of war veterans from taxation.

3. Special school district taxes, including high school districts, taxes to pay interest and principal on district bonds, etc., *held* not a "county tax" within Comp. St. § 2753, as amended by Laws 1921, c. 50, § 1, providing for reimbursing counties for revenue lost because of exempting war veterans from taxation.

4. Though the term "county tax" might be used in a statute so as to require it to be construed as being distinguished only from state taxes, the intent to so use it should be reasonably clear.

5. Under Comp. St. § 2753, as amended by Laws 1921, c. 50, § 1, exempting property of war veterans from taxation, and providing that the several county treasurers shall submit to the state treasurer a certified statement of exemptions, it is clearly intended that the amount payable to each county shall be determined by the state treasurer, and that such certificate is a sufficient compliance with Const. art. 16, § 7, in view of Comp. St. 1920, § 118, providing that the auditor need not audit claims required to be audited by other officers, and the auditor should issue his warrant on the certificate of the state treasurer.

ORIGINAL proceedings in mandamus by the State, on the relation of the Board of County Commissioners of Goshen County, against John M. Snyder, as State Treasurer. Heard on demurrer to respondent's answer. See also 129 Wyo. 199, 212 Pac. 771.

*Erle H. Reid* for the demurrer.

Chapter 50, Laws 1921 was held constitutional in a former decision of the Court.    (212 Pac. 771.) ; the present issue is as to the revenue loss suffered by Goshen County by reason of property exempted in 1921; an item of $1,546.02 may be deducted from the original claim, leaving a balance of $6,395.06; respondent admits a loss to plaintiff of $3,230.55 ; "County Tax" as used in the act was intended to distinguish between State and County taxes as a whole, and not to limit the reimbursement to taxes actually lost by the County as distinguished from school districts and towns within it.    The intent of this law is to make the burden fall upon the State at large and thus equalize the burden of exemption as between the several counties of the State ; the State Treasurer is the proper officer to audit relator's claim.    Art. XVI, Sec. 7, Const. Paragraph six of the act in question requires county treasurers to submit to the State Treasurer etc.; submission is defined as yielding to authority, 37 Cyc. 345; Millver v. Wolfe, 63 Ia. 233, 18 N. W. 889; Washburn v. Lufkin, 4 Minn. 466; Columbia v. Bailey, 171 U. S. 161, 43 N. H. 176; Terr. v. Grant, 3 Wyo. 241, 21 Pac. 693.    The Constitution does not direct that the State Auditor is the only officer to whom claims against the State Treasurer must be presented for audit.    The provisions of Sec. 118 C. S. contains an exception which takes the act under which relator claims, out of the statute ; clearly, claims of this class must be submitted to the State Treasurer, for audit, before allowance in payment.    We believe the demurrer should be sustained.

*Embree H. Foster* and *Vincent Carter, Amicus curiae.*

Relator asks this Court to construe the words ''County Tax'' to include; general County tax; general County School tax; general bond sinking fund; taxes of Cities and Towns; and School Dist. taxes for all purposes. If it was the intention to make the State bear the burden rather than the counties, the principle of equality and uniformity should prevail, and the benefits each county derives should be based on some uniformity of ratio to the burdens imposed. Equality and uniformity could not obtain by following relator's theory. Contributions demanded must be public in nature. Cooley p. 105; Kirley v. Shaw, 19 Pa. St. 258. The difference in the rate of levy imposed for town and city taxes differs in such a way, that the principle of uniformity is impossible when reimbursement is considered, and the same is true as to benefits derived under the exemption. A distinction not warranted by the Constitution. Dorgan v. Boston, 12 Allen 233; Hammett v. Phila., 65 Pa. St. 146; Judson p. 343. The Legislature never intended that the words ''County Tax'' should include the tax of school districts and cities and towns; such taxes have always been distinguished from county taxes. 2853, 2934, C. S.

*D. J. Howell,* Atty. Gen. and *W. L. Walls,* Spec. Asst. Atty. Gen., for respondent.

Relator contends that the words ''County Tax'' as used in the Act were used to distinguish between State and County taxes as a whole; we believe the intention is unsound; the statute clearly states that reimbursements shall be for the actual amount of County tax on property exempted, less poll taxes so exempted by such county, taxes levied for State revenue; support of common schools; for county revenue for all purposes and a poll tax of $2.00 on all persons over the age of twenty-one and under fifty, for school purposes are all of the purposes for which a county is authorized to levy taxes for actual county purposes; a county is a distinct body corporate independent of other subdivisions

of the State. 1300 C. S., so are school districts. 2237 C. S., and cities and towns 1624-1655-1695 and 1751; under 2238 C. S. school districts vote district tax to meet their particular needs; this district tax is collected by the County, but is not county tax, 2853 C. S., it is therefore an actual county tax, as the term is used in the exemption statute. There is nothing in Section 1, of Chap. 50, Laws 1921 requiring the State Treasurer to audit relator's claim; the words "audit" and "submit" have a different meaning. The Constitution, Art. XVI, Sec. 7 describes the manner in which State money shall be paid out, and sub-division of Sec. 118, C. S. 1920 makes it the duty of said Auditor to audit and settle claims against the State.

POTTER, Chief Justice.

This court's original jurisdiction in mandamus as to state officers granted by the constitution is invoked by this proceeding. The relator, the Board of County Commissioners of Goshen County, seeks to have the state treasurer required to reimburse that county to the actual amount of the county tax on property exempted in said county in 1921 under the provisions of an act approved February 15, 1921, known as the Soldier's Exemption Statute, and published as Ch. 50 of the Laws of that year. That act amended Sec. 2753, Comp. Stat. 1920, declaring certain described property to be exempt from taxation. The section was thereby amended by reenacting the 4th and 5th paragraphs thereof and adding a 6th paragraph. The 5th paragraph of the section had declared exempt the property of all honorably discharged veterans of the Civil War to the amount of $2000 in assessed valuation, and it was amended and reenacted by the statute in question so as to exempt to said amount of assessed valuation the property of all honorably discharged veterans of the Civil War, the Spanish-American War, and the World War, their widows during their widowhood, and all nurses who served during the World War, and by adding a provision that no person shall be entitled to such ex-

emption unless he or she be a bona fide resident of this state.

The case was previously heard on a demurrer to the application for the writ (212 Pac. 771) raising certain questions as to the constitutionality of the statute, and the statute was held to be valid in every respect in which it was assailed, including the 6th paragraph again before us, this time for construction. We might add to the authorities then cited sustaining the validity of that paragraph the following:

Bexar Co. v. Linden, 110 Tex. 339, 220 S. W. 761; A. T. & S. F. Ry. Co. v. Johnson, 85 Okla. 161, 204 Pac. 910; Town of Milton v. Cook, 244 Mass. 93, 138 N. E. 589. The court say in the Texas case:

"The effect of the statute   *   *   *   is to set apart the excess fees of District Attorneys and other officials as State funds for governmental purposes of the State with whose execution the counties, as instrumentalities of the State, are charged. Such a dedication is in no true sense a grant of public money. It is but an appropriation of funds of the State for the uses of the State. It is therefore a constitutional use, having no character of a bounty or gratuity."

The said 6th paragraph is generally understood and may be described as providing for reimbursement by the state to the several counties for tax losses on account of such exemptions. It reads as follows:

"Sixth.—It shall be the duty of the several county treasurers throughout the State of Wyoming to submit to the state treasurer, on or before the first day of March in each year, a certified statement of the exemptions allowed by said counties under the provisions of this act, and on or before the first day of May following, said state treasurer shall reimburse each of such counties to the actual amount of the county tax on such property exempted, less poll taxes so exempted by such counties."

The original application for the writ alleged that the county treasurer of Goshen County had submitted to the State Treasurer a certified statement of the exemptions in said county under the statute, showing a loss to the county in taxes amounting to $7941.08; that the State Treasurer had failed, refused and neglected to reimburse the county therefor, notwithstanding that an appropriation for the purpose had been made by the legislature at its said session in 1921. It was suggested in concluding the opinion disposing of the demurrer to the application for the writ, that it might be necessary for an issue to be made up respecting the amount of the county's claim properly payable out of the state treasury under the said sixth paragraph of the statute. Following that suggestion an amendment to the application for the writ was filed, separating the amount claimed for such exemptions by said county for the year 1921 into its various items as follows: State tax $1546.02; General County tax $1951.33; General County School tax $924.60; General bond sinking fund tax $354.62; Special school district tax $2564.19; School district bond interest fund tax $108.91; Taxes levied for the town of Lingle, $90.70; Taxes levied for the town of Torrington, $392.71.

An answer was thereafter filed by the respondent admitting everything alleged in the petition or application as amended, except: It denies that Goshen County lost through said exemptions the total amount alleged, or any sum greater than $3230.50, the aggregate of the loss of $1951.33 of the general county tax, $924.60 of the general county school tax, and $354.62 of the general county bond sinking fund tax, and that the respondent is willing and able to pay said amount. And it alleges that the respondent is prohibited from paying money from the state treasury except upon warrant drawn by the proper officers after a proper audit of the claim; that it is the duty of the state auditor to audit all claims against the state; that no warrant has been drawn by the auditor against any fund in the respondent's hands to pay relator's claim, and that said claim has never been

presented to the auditor for audit and settlement. To that answer a general demurrer was filed and the case has been submitted for final disposition upon the issues thereby presented.

The principal question—the amount payable from the state treasury under the statute—arises from a dispute over the meaning of "county tax" as used in the 6th paragraph aforesaid, requiring reimbursement to the counties; the county contending that it includes all the taxes levied and collected in the county, including special school district tax, school district bond tax, and taxes levied for cities and towns, and the respondent contending that it includes only such taxes as are levied for county revenue or county purposes, as distinguished from school district and municipal taxes. There is a brief also filed on behalf of Natrona County contending as the respondent does. It is conceded by both parties, as it must certainly be held, that the term "county tax" as used in the statute does *not* include State taxes. No county can be entitled to reimbursement for any loss of state taxes. It does not lose them; the state does and it bears the loss.

It was said by this court in State v. Laramie County, 8 Wyo. 104, 55 Pac. 451, explaining our taxing procedure:

"Our scheme of taxation embraces a direction or fixing of a rate for state taxes by the state board of equalization, a notification thereof to the county clerk of each county, and a levy therefor, together with a levy of county and school taxes, by the board of county commissioners. The assessment rolls are prepared by the county assessors, the valuations of railroad and telegraph lines and of live stock being fixed by the state board. The tax lists are prepared by the county clerks, and upon the several county treasurers as collectors of taxes, devolves the duty of collecting the state, county, and school taxes in their respective counties."

It might then have been explained also, if necessary, that aside from a general school tax levied by the county board, to be distributed, when collected, among the several school districts in the county according to a method prescribed by statute, each school district may vote, subject to statutory limitation as to amount, a sum to be levied by the county board and collected by the county treasurer, as a special school district tax, a procedure still retained in the statute; and also that the county board levies the necessary taxes upon the property of each school district and high school district to pay the principal and interest upon bonded indebtedness of the district. And it may be added, that tax lists are now prepared by county assessors, city and town taxes are levied by the county board and collected by the county treasurer at the same time of the annual levy and collection of other taxes, and, further, that special school district and municipal taxes collected by the county treasurer are paid by him to the respective district and municipal treasurers, except school district taxes collected to pay interest or principal upon bonded indebtedness of a district, which are retained in the county treasury for that purpose.

The general authority for a levy of taxes by the county, originally enacted in 1869, is now found in the second paragraph of section 2752, Comp. Stat. 1920. (Comp. L. 1876, Ch. 109, Sec. 1; R. S. 1887, Sec. 3768). It is thereby provided in substance; That the county board shall annually levy a tax for the support of the common schools in the county not to exceed three mills on the dollar. For county revenue, for all purposes, a tax, not to exceed twelve mills on the dollar, including general school tax and exclusive of state revenue, except for the payment of its public debt and interest thereon. The paragraph also contains limitations upon expenditures for certain stated county purposes, such as support of the poor, and road purposes.

The term "county tax" or "county taxes" from the beginning of our statutory taxing procedure has been re-

ferred to as something separate and distinguishable from
other tax or taxes for other governmental subdivisions or
bodies, and it must be regarded as having acquired by stat-
ute a definite and well understood meaning, limited to taxes
which, when collected, belong to the county for expenditures
in defraying the expenses of the county government—in
other words, taxes levied for county revenue or purposes
as distinguished from other governmental purposes. J. M.
Dougan Co. v. Van Riper, (Or.) 189 Pac. 897. And the
same is true of "school district taxes," and "city" or
"town" taxes. They are referred to in the statute by those
terms as meaning respectively taxes levied for school dis-
trict or city or town purposes. "The taxes of all school dis-
tricts  *  *  *  shall be collected like county taxes."
Laws 1869, Ch. 7, Title VI, Sec. 4, page 232; Comp. L. 1876,
534; Comp. L. 1920, Sec. 2853. In 1876 school district
taxes were collected by the county collector upon separate
district tax rolls. Comp. L. 1876, 534. And see, to the same
effect, Sec. 2754, Comp. Stat. 1920. "The county commis-
sioners shall  *  *  *  cause to be levied a tax for the sup-
port of schools,  *  *  *  which shall be collected  *  *  *
as state and county taxes are collected, except that it shall
be receivable in cash or warrants of the school district."
Comp. Stat. 1920, Sec. 2850. "All state, county and school
district taxes shall be due and payable" etc. Id. Sec. 2855;
L. 1895, Ch. 107, Sec. 1; L. 1923, Ch. 60, Sec. 4. "The taxes
of all cities and towns  *  *  *  shall be collected like
county taxes." Taxes to construct or maintain a county
hospital "shall be levied and collected  *  *  *  as other
county taxes." Comp. Stat. 1920, Sec. 1608. "The county
clerk in making out the annual tax list shall carry out in a
separate column the amount of the district school tax." Id.
Sec. 2052. At the same session, 1921, that the statute in
question was enacted, another was enacted mentioning
"state, county, city and school district taxes" in providing
for postponing the adding of a penalty to delinquent taxes
for the year 1920. L. 1921, Ch. 34, Sec. 1. In 1911, (Ch.

106, Laws 1911) an act was passed fixing a limitation on certain taxes under the title: "AN ACT fixing a limitation on annual, city, town, county and school district tax levies," etc.

This court said in the case of McCague Inv. Co. v. Mallin, 25 Wyo. 373, 170 Pac. 763:

"School district taxes are not levied for county revenue, and they are independent of the general school tax * * * The general school tax is a tax authorized by statute to be levied upon all taxable property of the county, and is not a tax for county purposes or county revenue."

In the earlier case of Powder R. Cattle Co. v. Com'rs., 3 Wyo. 598, 29 Pac. 361, 31 Pac. 278, it was held that the general school tax is not a tax for "county purposes." And in Sch. Dist. v. Com'rs., 15 Wyo. 73, 86 Pac. 24, 11 Ann. Cas. 1058, the court said as to certain school district taxes:

"The county treasurer is by virtue of his office collector of taxes * * *. As such collector of taxes he received the moneys involved in this suit, which belonged neither to the state nor the county; and he was not authorized to pay the same into the county treasury. It formed a fund distinct in itself, separate and apart from the general school fund of the county, the disposition of which is independent of the Board of County Commissioners, and, unlike the general fund for school purposes, it is neither apportioned nor paid out on order of the county superintendent of schools."

Notwithstanding that the general school tax levied by a county is not a tax strictly for county revenue, yet it is levied alike upon all taxable property in the county, and when collected is distributed upon a proportionate basis fixed by statute among the several school districts in the county; and it was included with taxes for county revenue in the statutory provision limiting the annual rate of tax for such revenue, and is so included in the provision of the Constitution limiting the annual tax for that purpose.

Const., Art. XV, Sec. 5.   Such inclusion of the general school tax, as indicated in one of our decisions, may, no doubt, have been deemed necessary to bring it within any limitation upon a tax for county revenue.   But it goes first into the county treasury, though all of it is afterwards distributed to the school districts, and might, we think, have been looked upon by the legislature as forming a part of the county tax.   Hence we are not disposed to exclude the general school tax.   The county as such, representing all the people of the county considered as a body and not as divided into districts, will have certainly lost that tax through the exemptions.   So we think it is not unduly stretching the term "county tax," considering the purpose of the statutory provision using it, to construe it, for such purpose, as including what is known as the general school tax.

Whether special school district taxes, including high school districts, taxes to pay interest and principal upon district bonds, and city or town taxes may likewise be included is a different and perhaps a more difficult question.   If it might be proper to construe the term "county tax," when used in a statute, as including all or either of such taxes where the intention that they or either shall be included should clearly appear from the other provisions of the statute, in view of its purpose, we are quite unable to discern any such intention in the words or purpose of this statute.   It is said that laws are presumed to be passed with deliberation, and with a knowledge of all existing laws on the same subject.   Suth. Stat. Constr., Sec. 137.   And certainly we may assume that the members of the legislature have been sufficiently interested in the public affairs of their state or at least of their county to know how money is raised by taxation for the public schools, and the county government, and to have become acquainted with the distinction between a county tax and a school district tax or a city or town tax.

The only reason suggested in relator's brief for the comprehensive construction contended for seems to be that there is no reason for requiring a reimbursement for the county tax that would not equally apply to school district and municipal taxes. We need not disagree with that, although we think there might be a reason, appearing satisfactory to the legislature, for confining reimbursement strictly to the county tax. But if every reason might apply to such other taxes, that cannot be regarded as a sufficient ground for a judicial declaration that the legislature intended to provide that there should be a reimbursement for the loss of those other taxes. The suggested reason relates only to the *purpose* of the act—to reimburse for a loss of taxes. But it provides *only* for *reimbursing the county;* and with no provision whatever for a distribution of any part of the money to school districts, cities or towns. Where a distribution to school districts of money allotted to a county from the state has been intended it has been usual to provide expressly for such distribution. For example: Forest reserve funds when paid to a county are required to be distributed by order of the county board to the general school fund and the road fund. Comp. Stat. 1920, Secs. 137-140. And the money when in the school fund would be a subject to apportionment among the several districts. Careful provision is made for apportioning and distributing the school land income fund, after the county's proportion has been received. And a statute enacted at the same session in 1921 for an apportionment of the "Government Royalty Fund" (Ch. 40, L. 1921), expressly provided for distributing a part of the fund to counties upon a stated educational basis, and expressly also for a distribution of such money from the county treasury to the several school districts in the county. We find no similar provision in the statute in question. Nor has it been pointed out to us by what authority, if any, the court might provide by judicial decree for a proper distribution to school districts and municipalities, upon constru-

ing the statute as including school district and municipal taxes.

But, assuming that said power would exist if the statute had plainly provided for the inclusion of the loss of school district and municipal taxes or should be construed as so providing, the point is that the absence of language plainly so providing strongly indicates a lack of intention by the legislature to include them. And that is further indicated by the provision in the General appropriation act of the same session appropriating a sum for the purpose of said reimbursement. That provision declares that a stated sum is appropriated ''to reimburse the various counties of the state for loss incurred by them on account of the amendment to the 5th paragraph of Section 2753 * * * relating to Soldiers Exemptions.'' L. 1921, Ch. 70, Sec. 34b. Thus it states that the reimbursement is for ''loss'' incurred by' ''them,'' the various counties, without the slightest suggestion that the appropriation may or is intended to be used to replace any loss sustained by school districts, cities or towns. The very clear intention of the statute to replace a *loss* is carelessly expressed in the paragraph in question, for it declares that the treasurer shall reimburse to the actual amount ''of the county tax on such property exempted.'' There will, of course, be no tax on the property or value thereof exempted. What was clearly intended is to reimburse for a loss of the tax because of the exemption. And that is plainly stated in the appropriation act, but without it we have not hesitated to construe the statute as so providing, to carry out its evident purpose.

Since a county is a taxing agency of the state as well as a body politic and corporate for the purpose of exercising its delegated powers of county government (see State v. Laramie county, supra), we do not much doubt that the term ''county tax'' might be so used in a statute as to require it to be construed as distinguished only from state taxes, as determined by the purpose of the statute and the language employed to effectuate it. But the intention to so

use it should be reasonably clear. It is not clear in this case, and we are forced to the conclusion that neither the language of this statute nor its purpose as thereby expressed will justify a construction that the term was used in this instance in the suggested comprehensive sense.

The other question presented by the present demurrer relates to the duty of the respondent, generally, in paying out money from the state treasury. The following constitutional and statutory provisions are in point:

Const. Art XVI, Sec. 7: "No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political sub-division, shall be audited, allowed or paid until a full itemized statement in writing, verified by affidavit, shall be filed with the officer or officers whose duty it may be to audit the same."

Comp. Stat. 1020, Sec. 118: "The duties of the state auditor shall be: First—Audit and settle all claims against the state payable out of the treasury, except only such claims as may be expressly required by law to be audited and settled by other officers and persons. Second—Draw all warrants upon the treasurer for money. Third—Express in the body of any warrant  *  *  *  the particular fund appropriated by law out of which the same is to be paid. Fourth—Audit, settle and adjust the accounts of the collectors of the revenue, and other holders of public money, who are required by law to pay the same into the treasury. Fifth—To keep an account between the state and the state treasury  *  *  *."

Comp. Stat. 1920, Sec. 132: "The treasurer shall in no case disburse or pay out of the state funds except on warrants drawn by the auidtor."

The statute in question was held not invalid, by the former opinion, because of the absence of an express provision for an audit of a county's claim or the issuance of a warrant; but we said:

"It would still be open to the treasurer to protect his office and the state by requiring that any claim presented under the statute shall be audited, and that a warrant shall first be issued by the proper state officer for the payment of any such claim. And the court in this case, upon any final order directing the payment of the alleged claim or any part of it, can likewise provide for a compliance with the provisions of the Constitution in that respect."

A county's claim for reimbursement under this statute is not of the same class as an ordinary indebtedness or obligation of the state, but, as shown by the former opinion, the statute provides, in effect, for the transfer of public money from one public treasury to another, still to be used for governmental purposes. Wherefore we doubt that such claim should be controlled by the provision aforesaid of the Constitution requiring a verification by affidavit, but in that respect we think the official certificate of the county treasurer required by the statute necessarily to be based upon public records should be held sufficient. There should, of course, be an audit of the claim in the sense of a determination in some manner of the amount to be paid. And the issuance of a warrant by the auditor for such payment is clearly essential. Under Section 118, C. S. 1920, however, the auditor need not conduct the preliminaries of the audit and settlement where the claim is expressly required by law to be audited and settled by other officers, and persons, though the auditor must, no doubt, in every case satisfy himself that there has been such a determination of the amount due as to authorize the issuance of the demanded warrant. And that situation is presented under several statutes providing for the transfer or distribution of state treasury funds to another public treasury. It has been pro-

vided by statute that certain funds should be paid by the state treasurer to the treasurer of the University board, upon the warrant of the state auditor to be issued "upon request" of said board. Laws 1903, Ch. 40, Sec. 3; C. S. 1910, Sec. 433; C. S. 1920, Sec. 489. Forest reserve funds in the state treasury are required to be distributed to the several counties entitled thereto under the statute through a specified procedure, including an apportionment by the treasurer, a certificate by him to the auditor of the amounts due the several counties, and the issuance thereupon by the auditor of his warrant to the treasurer of each of such counties. C. S. 1920, Secs. 137-139. Certain public school funds in the state treasury are distributed upon warrants issued by the auditor upon the requisition of the state superintendent of public instruction. Id. Sec. 144. And like those examples, in principle, there is the statute retained from territorial days allowing credit to a county upon its liability to the state for state taxes, for such amounts as are "certified" to be double or erroneous assessments. Id. Sec. 2838.

By the provision that the several county treasurers shall submit to the state treasurer "a certified statement" of the exemptions in said counties under the statute, it is clearly intended, we think, that the amount payable to each county shall be determined by the state treasurer, and that the said certified statement shall furnish the necessary information for such determination. And the state treasurer may, no doubt, require that said certified statements of county treasurers shall be reasonably sufficient in form and substance to show the facts and figures necessary to a proper determination of the amount or amounts due. It is necessary, however, that he should have the auditor's warrant before paying out the money from the treasury; but we can see no objection to the issuance of the required warrant upon a certificate of the state treasurer filed with the auditor, showing the several amounts due as determined by him, with a request of the treasurer for the warrant in each case, not-

withstanding the absence of specific authority in this particular statute for that part of the procedure. The statute does declare expressly that the treasurer shall reimburse the counties. That being the main purpose of the paragraph, expressed in mandatory form, it seems that there could be no difficulty in sustaining the propriety or authority of some such procedure; the suggestion, however, is not intended as limiting the authority of the treasurer and auditor to adopt such procedure as may be deemed equally effective in complying with the constitutional requirement for the issuance of a warrant and perhaps better safeguarding the public funds or the record of their transfer. It might be found desirable, indeed, that a copy of the several certified statements of the county treasurers, to be furnished either by them respectively or by the state treasurer, shall be filed also in the auditor's office. These are, of course, bare suggestions, intended principally to indicate that the statute must be regarded as leaving the treasurer and auditor with authority to regulate the procedure for transferring said money from the state to the county treasury, but without interfering with the county's rights to reimbursement to the extent that such right is hereby declared.

We conclude, therefore, that the county tax, as used in the statute in question, does not include school district or municipal taxes, or taxes for the payment of the interest or principal upon bonds of school districts, cities or towns, but that it does include the general county school tax provided for in section 2752, Comp. Stat. 1920, by the words that the county commissioners "shall annually levy a tax for the support of the common schools in their county, not to exceed three mills on the dollar."

The demurrer to the answer will be overruled *pro forma,* and unless a desire is expressed within ten days to further plead an order will be entered requiring the respondent treasurer to act upon the county treasurer's certified statement, if sufficient in form and substance, and upon determining the amount due the relator county for the loss of the

county tax as herein defined and limited, for the year 1921, to proceed by some method satisfactory to himself and the auditor to procure and transmit a warrant for the proper amount payable to the county treasurer.

BLUME and KIMBALL, JJ., concur.