FREDERIC F. SCUDDER *vs.* SELECTMEN OF SANDWICH.

Barnstable.    April 7, 1941. — June 24, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Mandamus.    License.    Gasoline.    Certiorari.    Practice, Civil,* Auditor:
  trial after report filed.

In a mandamus case, after the filing of the report of an auditor whose
  findings were not to be final, and a reservation by one of the parties
  of "the right to introduce further evidence other than the auditor's
  report" upon certain issues, a judge of the Superior Court under
  Rule 88 of the court (1932) properly received such further evidence.
No foundation appeared for relief by writ of mandamus to compel select-
  men of a town to grant a license for the storage and sale of gasoline
  under G. L. (Ter. Ed.) c. 148, § 13, as amended, where upon competent
  evidence the respondents were in substance found to have acted in
  good faith and a finding that they had acted arbitrarily, whimsically
  or capriciously was not required.
The selectmen of a town are granted by G. L. (Ter. Ed.) c. 148, § 13,
  as amended, a discretion as to the granting of licenses for the storage
  and sale of gasoline which extends beyond the mere question of fire
  risk and involves other considerations affecting the public interests.
The proper remedy for determining whether selectmen of a town, in re-
  fusing after a hearing to grant a license for the storage and sale of
  gasoline under G. L. (Ter. Ed.) c. 148, § 13, as amended, had adopted
  erroneous views of the law was not by a petition for a writ of manda-
  mus, but was by a petition for a writ of certiorari.

PETITION, filed in the Superior Court on April 16, 1940,
for a writ of mandamus.

The case was referred to an auditor to "find the facts
and report his findings to the court, together with such
questions of law, arising in the course of his duty, as any
party may request," with stipulations as to the time for
the beginning and the conclusion of the hearings, and the
following: "The auditor shall prepare and submit to coun-
sel within five days after the close of his hearings a draft of
his report.    The parties shall within five days after the
auditor settles the draft of his final report and gives notice
thereof file their written objections with the auditor.    The

auditor is directed to file his final report with any objections thereto not later than May 31, 1940."

Appended to the report were objections by the respondents "to the admission of all testimony relative to the reasons of the board of selectmen for their refusal of the permit."

After the filing of the report, the respondents filed a document stating that they reserved "the right to introduce further evidence other than the auditor's report upon" certain issues.

The case then was heard by *Morton, J.,* upon the report and further evidence offered by the respondents.

*K. E. Wilson,* (*D. J. Fern* with him,) for the petitioner.

*J. P. Sylvia, Jr.,* for the respondents.

QUA, J. By this petition for a writ of mandamus the petitioner seeks to compel the selectmen of Sandwich as the "local licensing authority" to grant him a license for the storage and sale of gasoline on premises adjoining the Cape Cod Canal. G. L. (Ter. Ed.) c. 148, § 13, as last amended by St. 1939, c. 333.

The selectmen gave the petitioner a hearing as required by the statute and later notified him that they refused to grant the license. An auditor whose findings of fact were not to be final made a detailed report wherein he found that the reasons of the selectmen for refusing the license were that the petitioner had stated that he would put out of business the Sandwich Marine Corporation, which a short time before had obtained a similar license for an immediately adjoining location; that the petitioner had assumed a "general arrogant attitude"; "that he would take them [the selectmen] to court"; that "they refused to be a party to put someone else out of business who had invested all his money in his place and who already had a permit"; that the petitioner "as an agent of Gulf Oil Corp. would provide unfair competition"; that "it was not for the public good to allow Scudder with the help of a big corporation behind him to do another man [referring to the person or persons interested in Sandwich Marine Corporation] out of his week's pay"; and that being engaged in the same business as Sandwich Marine Corporation

"was a lack of 'coöperation.'" The auditor found that the "essence" of the board's reasons for refusing a license to the petitioner was "the protection of the business of Sandwich Marine Corp., which corporation is controlled and operated by Sandwich residents." The petitioner was not a resident of Sandwich.

At the trial in the Superior Court evidence in addition to the auditor's report, including the deposition of one Pope, was properly received under the provisions of Rule 88 of that court (1932). *Ott* v. *Comeau,* 297 Mass. 108. There is nothing in the record to show that Pope's deposition had been taken in violation of Rule 39 of the Superior Court (1932). See G. L. (Ter. Ed.) c. 233, § 25. Some of this evidence tended to show that there was no personal discrimination against the petitioner; that protection of the business of the Sandwich Marine Corporation was not the "essence" of the reasons for refusing the license; and that public disapproval of a license to the petitioner and the facts that there was not business for two at the location and that in competition both would fail were reasons actuating the selectmen. The judge found that the reasons for the refusal of a license to the petitioner "were set forth in" the auditor's report, but he found also that their "essence" was not the protection of the business of another licensee, and that the action of the board was "reasonable and proper" and "in no sense capricious, arbitrary or whimsical."

No foundation for relief by writ of mandamus appears in this record. That writ is issued only where the respondents are under a legal duty to perform some particular act or acts the performance of which the court can order in definite terms and enforce if necessary. *Knights* v. *Treasurer & Receiver General,* 236 Mass. 336, 337. *Madden* v. *Election Commissioners of Boston,* 251 Mass. 95, 101. *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams,* 296 Mass. 41, 44. *Security Co-operative Bank* v. *Inspector of Buildings of Brockton,* 298 Mass. 5, 6. This is not a case where the selectmen have refused to act and can be compelled by the court to take action. Compare *Dullea* v.

*Selectmen of Peabody,* 219 Mass. 196; *Commonwealth* v. *McCarthy,* 225 Mass. 192, 196; *Siegemund* v. *Building Commissioner of Boston,* 259 Mass. 329, 334, 335; *Pettengell* v. *Alcoholic Beverages Control Commission,* 295 Mass. 473, 478. They have acted and have refused the license. There is no finding that they have acted in bad faith, so that they can be ordered to act in good faith. Compare *French* v. *Jones,* 191 Mass. 522; *Rea* v. *Aldermen of Everett,* 217 Mass. 427, 431, 432; *Jaffarian* v. *Mayor of Somerville,* 275 Mass. 264. We are not prepared to say that the judge was obliged to find that they acted arbitrarily, whimsically, or capriciously, even though their reasons were those stated by the auditor. We construe the judge's findings to mean that in his belief the selectmen acted in good faith in what they regarded as the public interest and not merely to protect one competitor against another for the private advantage of the former. This was a possible interpretation of their conduct, whether or not their reasons were valid in law. See *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams,* 296 Mass. 41, 48; *Fleming* v. *Dane,* 304 Mass. 46, 52. The judge had the advantage of seeing and hearing the witnesses.

The petitioner argues that we should now command the respondents to issue the license, but obviously we cannot take that course. Under the statute the licensing authority is given a somewhat wide discretion as to the issuing or withholding of licenses. That discretion extends beyond the mere question of fire risk and involves other considerations affecting the public interests. *St. James Building Corp.* v. *Commissioner of Public Safety,* 260 Mass. 548, 555. *Hanauer* v. *State Fire Marshal,* 271 Mass. 506, 510–511. *Rawding* v. *State Fire Marshal,* 272 Mass. 307. What its exact boundaries are we need not now determine, since it is evident that no facts are established on this record which as matter of law require that a license issue. Within the area of discretion the power lies in the licensing authority and not in the court. If in deciding the issue before them and in refusing the license the selectmen have adopted erroneous views of the law which have affected the result the remedy

is not to be found in what would amount to a usurpation by the court of the licensing power, but lies rather in a petition for a writ of certiorari to review the proceedings of the selectmen upon a proper and adequate return by them. *Chase* v. *Blackstone Canal Co.* 10 Pick. 244. *Morse, petitioner,* 18 Pick. 443. *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 164, 165. *French* v. *Jones,* 191 Mass. 522, 532. G. L. (Ter. Ed.) c. 249, § 4. *Randall, petitioner,* 11 Allen, 473, 478. *Brewer* v. *Boston, Clinton & Fitchburg Railroad,* 113 Mass. 52, 56–57. *Cambridge* v. *Railroad Commissioners,* 153 Mass. 161, 169, 170. *Moneyweight Scale Co.* v. *McBride,* 199 Mass. 503, 505. *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, 279–281. The offices of the writs of mandamus and of certiorari are distinct, and the one may not be employed to perform the peculiar function of the other. See *Harper* v. *Board of Appeal of Boston,* 271 Mass. 482, 484.

*Exceptions overruled.*