EVERETT F. KIDDER *vs.* CITY COUNCIL OF BROCKTON.

Suffolk. May 6, 1952. — September 11, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*License. Gasoline. Public Officer.*

A local licensing authority, in dealing with an application for a license to keep and sell gasoline and related products under G. L. (Ter. Ed.) c. 148, § 13, as amended, may consider not only the matter of fire risk but also other factors affecting the public welfare.

A denial by a local licensing authority of an application under G. L. (Ter. Ed.) c. 148, § 13, as amended, for a license to keep and sell gasoline and related products in connection with a proposed automobile service station at the intersection of two streets could not be said to have been arbitrary in view of evidence before the authority of such factors as the residential character of the neighborhood, heavy traffic at the intersection, children crossing to and from school at the intersection, and the existence of several other filling stations in the immediate vicinity.

PETITION, filed in the Superior Court on June 21, 1951.

The case was heard by *Goldberg,* J.

*George B. Rowlings,* (*R. Gaynor Wellings* with him,) for the petitioner.

*Samuel Smolensky,* City Solicitor, for the respondent, submitted a brief.

QUA, C.J.    This is a petition for a writ of certiorari to quash the decision of the city council of Brockton denying two applications by the petitioner under G. L. (Ter. Ed.) c. 148, § 13, as most recently amended by St. 1951, c. 329, for licenses to keep and sell gasoline and related products, all for the intended purpose of an automobile service station to be located at the southeasterly corner of Belmont and Ash streets.    The respondent's return includes a transcript of the evidence and the exhibits introduced at the hearing before the council.    G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1.    G. L. (Ter. Ed.) c. 213, § 3, Tenth B, inserted by St. 1943, c. 374, § 3.    Rule 117 of the Superior Court (1945).    In the Superior Court judgment was entered dismissing the petition.    The petitioner appeals.    G. L. (Ter. Ed.) c. 213, § 1D, as inserted by St. 1943, c. 374, § 4.

The contention of the petitioner is that the decision of the council was arbitrary and capricious, and that it was not warranted by the evidence.    "There is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare."    *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 493.    If error of law is claimed it must be made to appear upon the face of the return, and if the return is inadequate the petitioner must take steps to have it extended to show the error which he claims.    *Tileston* v. *Street Commissioners of Boston,* 182 Mass. 325.    *Newcomb* v. *Aldermen of Holyoke,* 271 Mass. 565.    *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 123–127.    *Worcester Gas Light Co.* v. *Water Commissioners of the Woodland Water District of Auburn,* 314 Mass. 60, 63.    *Real Properties, Inc.*

v. *Board of Appeal of Boston,* 319 Mass. 180. *Wright* v. *Health Commissioner of Boston,* 322 Mass. 535. *Clarke* v. *Board of Collegiate Authority,* 327 Mass. 279, 282.

No error appears on the face of the return.

The council was not limited to the matter of fire risk. It could take into account other considerations affecting the public welfare. *St. James Building Corp.* v. *Commissioner of Public Safety,* 260 Mass. 548, 555. *Hanauer* v. *State Fire Marshal,* 271 Mass. 506, 510–511. *Rawding* v. *State Fire Marshal,* 272 Mass. 307. *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 376.

There was evidence before the council tending to show that the vicinity, although zoned for business, which would permit a filling station, was still to a great extent residential in character; that Belmont Street was only thirty-four feet wide between curbs, so that, with parking permitted on both sides, there was dependable room for only two lanes of traffic, one lane in each direction; that the street was heavily travelled; that nearly seven thousand vehicles approached the intersection daily on that street and nearly a thousand more on Ash Street; that the proposed station was to have two entrances on Belmont Street and one on Ash Street; that thirty or more children crossed Ash Street at the intersection in going to and from school; and that there were already four filling stations on Belmont Street, of which one was diagonally opposite the proposed site at the same intersection, another was practically opposite the proposed site, the third was about three hundred feet from the proposed site on the same side as the proposed site, and the fourth was about five hundred feet farther away on the same side. "About a dozen" persons appeared at the hearing in opposition to the licenses. In the face of this evidence we cannot say that the refusal of these licenses was arbitrary or whimsical. The council may have reasoned that another station would tend to increase traffic at an already burdened intersection; that the slowing and turning of vehicles in and out of the station and across the sidewalk would further interfere with the free flow of traffic;

that the risk of accidents to children and others would be increased; that there would be additional noise and odors; that some property values might be adversely affected; and that there was no counterbalancing public demand for another station in this immediate vicinity. These were considerations for the council to weigh against the ordinary right of the landowner to use his property as he deemed most profitable to him. They are not matters for the court to pass upon. See *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373; *General Outdoor Advertising Co. Inc.* v. *Department of Public Works,* 289 Mass. 149, 192; *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams,* 296 Mass. 41; *Marchesi* v. *Selectmen of Winchester,* 312 Mass. 28.

*Judgment affirmed.*