VINCENT J. ANGELICO & others *vs.* COMMISSIONER OF
INSURANCE & another.

Worcester.    February 5, 1970. — May 4, 1970.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Mandamus. Public Officer. Insurance,* Enforcement of insurance law,
Commissioner of insurance.

Mandamus did not lie to compel the Commissioner of Insurance to order
an insurance company "to take immediate action" to desist from
certain conduct alleged to be in violation of the insurance laws, G. L.
c. 175, which the commissioner had decided involved no such violation,
or to review such decision.

PETITION for a writ of mandamus filed in the Supreme
Judicial Court for the county of Suffolk on May 2, 1968.

Upon transfer to the Superior Court, the case was heard
by *Tisdale,* J., on demurrers.

*John R. Hally* (*Thomas H. Brown* with him) for the
petitioners.

*David C. Hawkins,* Special Assistant Attorney General,
for the Commissioner of Insurance.

*George C. Caner, Jr.,* for Travelers Indemnity Company,
joined in a brief.

SPIEGEL, J.    This is a petition for a writ of mandamus
seeking, inter alia, to compel the respondent Commissioner
of Insurance (Commissioner) to order the Travelers In-
demnity Company (Travelers) "to take immediate action
to cease owning and operating the Travelers Auto Body
Company" (Tabco).   Travelers was permitted to intervene
as a party respondent.   Each of the respondents filed de-
murrers.   The case is here on the petitioners' appeal from
the sustaining of the demurrers [1] and denying the petitioners'

---

[1] The Commissioner's demurrer assigns the following grounds: "1. The
petition does not set forth facts sufficient to warrant relief to the petitioners
named therein.   2. The petition does not set forth facts sufficient to establish
that petitioners have standing to bring this action.   3. The petition does not
set forth facts sufficient to establish any legal duty owed to petitioners by . .¿
[the Commissioner] or any legal authority or power to do that which pe-
titioners seek this Court to command."

motion to amend their petition.[2]

The petitioners have alleged substantially the following. They are citizens and taxpayers in the Commonwealth. Travelers, a Connecticut corporation, is authorized to conduct certain insurance business in the Commonwealth, as provided for by G. L. c. 175. Tabco is a corporation organized under the laws of Connecticut to conduct an auto body repair business and is presently engaged in such business in Worcester. Tabco, since its incorporation in 1966, has been a wholly owned subsidiary of Travelers. After due demand by the petitioners, the Commissioner "specifically refused to take appropriate action to enforce the provisions of . . . [G. L. c. 175] against Travelers."

The petitioners also allege, in substance, that the Commissioner should have taken action against Travelers for the following reasons: (1) Under G. L. c. 175, § 3A, the Commissioner is charged "with the duty of administering and enforcing the provisions of that chapter."[3] (2) Travelers has no right to conduct an auto body repair business since under G. L. c. 175, § 150, as amended through St. 1946, c. 250,[4] Travelers, as a foreign insurance company, can

---

Travelers' demurrer assigns the following grounds: "1. The Petition does not set forth facts constituting a cause or matter entitling petitioners to relief by way of mandamus. 2. The Petition does not set forth facts showing that the petitioners have such interest in the subject matter as to give them standing to maintain this proceeding. 3. The . . . Commissioner's determination that Travelers was not in violation of the law and his refusal to question the propriety of its investment in Tabco, as alleged in paragraph 15 of the Petition, was a matter within his discretion and mandamus will not lie. 4. It appears from the Petition that the . . . Commissioner has not failed to act but has decided against petitioners' contentions and mandamus will not lie to require him to change his decision. 5. The Commissioner has no authority to issue an order to . . . Travelers . . . to cease owning and operating the Travelers Auto Body Company, as prayed for in prayer 1 of the Petition. 6. Mandamus will not lie to compel the . . . Commissioner to take action to revoke or suspend the license of . . . Travelers . . ., as prayed for in . . . the Petition, or to report the facts of the case to the Attorney General, as prayed for in . . . the Petition."

[2] The petitioners do not argue the denial of their motion and the appeal from such denial is therefore deemed waived.

[3] Material portions of G. L. (Ter. Ed.) c. 175, § 3A, are set forth later in this opinion.

[4] "Foreign companies, upon complying with the conditions herein set forth applicable to such companies, may be admitted to transact in the commonwealth, as provided in section one hundred and fifty-seven, any kinds of business authorized by this chapter, subject to all general laws now or here-

only participate in those "kinds of business authorized" by the chapter. The Commissioner licensed Travelers only to conduct "certain types of insurance business," not an auto body repair business. (3) The relationship between Travelers and Tabco, that of parent and subsidiary corporations, and "the complete control of Tabco by Travelers which is inherent in this relationship is sufficient in and of itself to violate the intent of . . . [G. L. c. 175, §§ 47, 150, 152]."[5] (4) Travelers initially invested $400,000 to $500,000 to create Tabco; the officers and directors of Tabco "are present or former officers or employees of Travelers, or are . . . closely affiliated with Travelers"; officers and directors of Travelers have made statements in press releases and meetings to the effect "that Tabco exists to serve the various purposes of Travelers and will be operated to that end"; and a spokesman for Travelers has stated that one of the primary purposes of Tabco "is to serve as a research project searching for ways to reduce insurance

after in force relative to insurance companies, and subject to all laws applicable to the transaction of such business by foreign companies and their agents; except that no foreign stock company may issue participating policies unless specifically authorized to do so by its charter or by the laws of its state or government; provided, that no provision of law which by its terms applies specifically to domestic life companies shall thereby become applicable to foreign life companies; and provided, further, that the provisions of section eighty-one relative to the contingent mutual liability of members shall not apply to any foreign mutual fire company which had been admitted to transact business in the commonwealth prior to January first, nineteen hundred and twenty-one and was then actually transacting business therein without complying with said provisions."

[5] General Laws c. 175, § 47, as amended, generally describes the scope of business activity in which an insurance company may engage.

General Laws (Ter. Ed.) c. 175, § 152, reads as follows: "No foreign company shall transact in this commonwealth any kind of business not specified in its charter and in its license. Any foreign stock company, or any company described in section one hundred and fifty-five, admitted to the commonwealth, may, if its charter permits, be licensed to transact the kinds of business permitted to domestic stock companies under section fifty-one, subject to the provisions of clause (d) of said section fifty-one and of subdivision (2) of the second clause of section one hundred and fifty-one and of the first clause of said section one hundred and fifty-five. Any foreign mutual company admitted to the commonwealth may, if its charter permits, be licensed to transact the classes of business permitted to domestic mutual companies under section fifty-four, subject to the provisions of clause (c) of said section fifty-four and of subdivision (3) of the second clause of said section one hundred and fifty-one. Any foreign life company admitted to the commonwealth may, if its charter permits, be licensed to transact the kinds of business permitted to domestic life companies under section one hundred and nineteen."

premium costs." (5) The operation of Tabco by its officers and directors is not in the best interest of Tabco, but "for the benefit of Travelers and in accordance with decisions made by . . . their superiors in the Travelers organization, which are based on the needs and purposes of Travelers." The Commissioner, through his general counsel, informed the petitioners that even "if the facts set forth in . . . [the] petition are correct, Travelers is nevertheless not in violation of any provisions of . . . [G. L. c. 175]." This conclusion is based on "the fact that Tabco is a subsidiary corporation of Travelers, rather than an open and direct Travelers operation."

In view of our disposition of the case, we pass questions of the timeliness of the appeal and the corporate relationship of Tabco and proceed to discuss whether there was error in sustaining the demurrers.

The petitioners contend, in effect, that mandamus will lie because "[t]he . . . [Commissioner] has no administrative discretion to refuse to enforce the insurance law where such refusal is based on an erroneous view of [the] law." They argue that if the directive of the insurance law is to endure, "the correct view of the extent of the Commissioner's discretion under § 3A is that he need not advise the Attorney General or take other action to enforce the law, *if* the facts as disclosed to him and developed by his investigation do not, in his opinion, constitute a violation of the law as *correctly interpreted.*" We do not agree.

General Laws c. 175, § 3A, provides that "[t]he commissioner shall administer and enforce the provisions of this chapter and . . . [i]f upon complaint, examination or other evidence exhibited to him *he is of opinion* that any provision . . . has been violated, he shall forthwith report the facts to the attorney general, to the proper district attorney or to the commissioner of public safety, who shall cause the offender to be prosecuted therefor" (emphasis supplied). Furthermore, under G. L. c. 175, § 5, as amended through St. 1933, c. 107, § 2, the Commissioner *may* revoke the license of a foreign insurance company, *"if he is satisfied*

. . . that any foreign company has violated any provision of law" (emphasis supplied). The Commissioner's duties under G. L. c. 175 are not solely ministerial, but involve the exercise of judgment and discretion in determining whether the provisions of the statute have been violated.

It is well established that a writ of mandamus will not issue unless the respondent is under a legal duty to perform some particular act or acts the performance of which the court can order in definite terms and enforce if necessary. *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 375, and cases cited. However, we are not confronted with such a case. In the case at bar, the Commissioner acted and found no violation of the law.

The petitioners, by way of a "flank attack," are arguing that the validity of the Commissioner's exercise of discretion depends on the correctness of his interpretation of the law and are seeking a review of his decision. *Ames* v. *Attorney Gen.* 332 Mass. 246, 251–252. *Howe* v. *Attorney Gen.* 325 Mass. 268, 270. *M. Doyle & Co. Inc.* v. *Commissioner of Pub. Works of Boston,* 328 Mass. 269, 271.

Even if the Commissioner had "acted incorrectly" and the petitioners sought "a review of his decision," mandamus is not an appropriate remedy. *Howe* v. *Attorney Gen., supra. Senkarik* v. *Attorney Gen. ante,* 211, 212. In such an event the remedy "lies rather in a petition for a writ of certiorari." *Scudder* v. *Selectmen of Sandwich, supra,* at 376–377.

*Orders sustaining demurrers affirmed.*