TERENCE M. BENNETT *vs.* BOARD OF ALDERMEN OF CHELSEA.

Suffolk.   January 6, 1972. — May 12, 1972.

Present: CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*License.   Garage.   Certiorari.*

Where the board of aldermen of a city refused to grant an applicant a license, required by the city ordinances, to maintain a garage, it was error for the trial court, in reviewing the denial on a writ of certiorari, to consider the fact that a competing permit applicant had vacated the subject premises subsequent to the decision of the board. [805–806]

Where the board of aldermen of a city denied an application for a license to maintain a garage, it was error for the trial court, in reviewing the board's action by a writ of certiorari, to quash the denial and order the license issued to the petitioner where there was no showing on the face of the record that the denial was due to an error of law by the board, and therefore the decision was for the board and not the court. [806–808]

PETITION for writ of certiorari filed in the Superior Court on July 10, 1970.

The case was heard by *Roy*, J.

*Morris Karll* for the respondent.

*Edward D. Grayson* for the petitioner.

QUIRICO, J.   This is a petition for a writ of certiorari brought by Dr. Terence M. Bennett (petitioner) against the board of aldermen of the city of Chelsea (board). The relief sought by the petitioner is (a) an order quashing the action of the board denying his application for a license "to maintain and use a building or structure as a garage or repair shop for automobiles,"[1] and (b) an order that the board issue such a license to him.   The case is before us on the board's appeal from an order of a judge of the Superior Court for judgment granting such relief to the petitioner.   G. L. c. 213, § 1D, as amended by St. 1957, c. 155; and c. 249, § 4, as amended through St. 1963, c. 661, § 1.

The following are the pertinent facts taken from admissions in pleadings and in the board's return as extended by order of the judge.   The petitioner was licensed to practise medicine in this Commonwealth on February 5, 1970, and has since maintained an office for such practice in East Boston.   On February 18, 1970, he filed a written petition with the board for a "[p]ermit to store and repair automobiles at 152 Pearl St. [in Chelsea] . . . [a]pproximately 30–35 cars maximum storage."   Attached to the petition was a letter by the petitioner to the board stating that his "intended use of the property is to open a garage specializing in storage, maintenance, and restoration of special interest and vintage motor cars."

The board referred the petitioner's application to its

---

[1] Such a license is required by the Revised Ordinances of the City of Chelsea, 1952, c. 12, § 12, which provides in pertinent part as follows: "[I]t shall be unlawful for any person to maintain and use a building or structure as a garage or repair shop for automobiles unless such person has first obtained a license for such purpose from the board of aldermen.   Private garages of single motor vehicles appurtenant to one, two or three dwelling houses or community garages equipped with single divided stalls are excepted from the provisions of this section."

committee on public safety, to the building inspector and to the chief of police for consideration and reports. On March 30, 1970, the committee recommended the granting of the permit. On April 25, 1970, the chief of police made a report giving biographical information on the petitioner and stating that a deed conveying the premises to the petitioner had been passed on April 17, 1970, and had been recorded, but the police department made no recommendation. On April 27, the building inspector reported that after necessary repairs and alterations of the structures (other than a church), the premises would meet with his approval for the intended use.

On February 17, 1970, Joseph T. DeFelice (DeFelice) applied to the board for a license to repair automobiles on the same premises. On that date he was occupying the premises and he held a "Class 2" or "used car dealer's" license authorizing him to buy or sell second-hand motor vehicles on the premises. G. L. c. 140, § 58, as amended through St. 1952, c. 103, § 2.

The board's return includes a copy of a letter dated March 18, 1970, from one J. William O'Donnell (not therein otherwise identified except for his address) stating in part that the premises "are being sold to Dr. Terry M. Bennett, who will take possession April 19, 1970. Dr. Bennett is purchasing these properties regardless of the disposition of his petition to obtain a permit for the repair and storage of automobiles. Mr. Joseph DeFelice, who is currently occupying a portion of the premises as a tenant-at-will, has been given an [e]viction [n]otice." On March 30, 1970, the petitioner wrote the board informing it that he was purchasing the premises, that he had started construction work on the buildings, and that "DeFelice is in the status of an evicted tenant [and] his application for a permit is thereby null and void." He added: "My application for a permit is the only valid application before the board at this time. . . . I intend to pursue the granting of the permit via normal legal channels in the event of any

further delay or setback, as I am completely committed to opening medical offices, home and garage by mid May of this year."

The board held a public hearing on April 27, 1970, on the application of the petitioner. Eight persons appeared and spoke in favor of the application. They were the petitioner, his lawyer, a lawyer for the corporation which had sold the premises to the petitioner about a week earlier, and five persons living in the area. These five included some officers and members of a neighborhood organization known as Community Action Programs Inter-City, Inc. (CAPIC). Five persons appeared and spoke against the application. They were DeFelice, his lawyer, and three persons living in the area. At this hearing the board assured the petitioner on several occasions that it found his personal qualifications exemplary and was solely concerned with the propriety of locating an automotive repair garage at the location of the premises.

The judge ruled (a) "that the evidence before the . . . [board] was as matter of law insufficient to warrant the denial of the license to the petitioner," and "that the denial of the petitioner's application was arbitrary and capricious, and abuse of discretion constituting error of law." General Laws c. 249, § 4, as amended, provides in part that, "It shall be open to the petitioner to contend at the hearing upon the petition [for a writ of certiorari] that *the evidence which formed the basis of the action complained of* . . . was as matter of law insufficient to warrant such action" (emphasis supplied).

In reviewing the action of the board on April 27, 1970, denying the petitioner's application, the judge did not limit himself to "the evidence which formed the basis" of the board's action. He also considered as a fact an allegation made by the petitioner in his petition on July 10, 1970, to the effect that: "14. DeFelice, who was at the time of the hearing under a court order to vacate the Premises by June 1, 1970, vacated the Premises on June 1, 1970, and is not now engaged in any activity at

the Premises." The board's answer to that allegation was that they "neither admit nor deny the allegations in paragraph 14, and further answering, say that it is immaterial." If DeFelice vacated the premises on June 1, 1970, evidence of that fact could not have been part of the evidence which formed the basis of the board's action on April 27, 1970, which the judge quashed. The event on the later date was not relevant to the validity of the board's action on the earlier date, and it was error for the judge to consider it in ruling that the evidence before the board was insufficient to warrant its denial of the petitioner's application.

We hold that the judge's ultimate order quashing the board's denial of the petitioner's application and ordering the board to issue a license to him was error for a more basic and compelling reason. By an ordinance, the validity of which has not been questioned, the city of Chelsea vested in the board the authority to issue licenses "to maintain and use a building or structure as a garage or repair shop for automobiles." These are licenses somewhat comparable to used car licenses or motor vehicle junk licenses under G. L. c. 140, §§ 58 and 59, both as amended and gasoline station licenses under G. L. c. 148, § 13, as amended. Both statutes delegate to "local licensing authorities" of municipalities the power of decision whether to issue such licenses. The primary responsibility for determining whether to issue such a license, and if so, for what premises and to which of several applicants rests with the licensing authorities and not with the courts.

The relative areas of responsibility and authority of the licensing authorities and the courts with respect to the issuance of such licenses were considered by us in *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, where the petitioner sought a writ of mandamus ordering the issuance of a license to him for the storage and sale of gasoline. There we said, at pp. 376–377: "The petitioner argues that we should now command the respondents to issue the license, but obviously we cannot take that

course. Under the statute the licensing authority is given a somewhat wide discretion as to the issuing or withholding of licenses. That discretion extends beyond the mere question of fire risk and involves other considerations affecting the public interests. . . . [Citations omitted.] What its exact boundaries are we need not now determine, since it is evident that no facts are established on this record which as matter of law require that a license issue. Within the area of discretion the power lies in the licensing authority and not in the court. If in deciding the issue before them and in refusing the license the selectmen have adopted erroneous views of the law which have affected the result the remedy is not to be found in what would amount to a usurpation by the court of the licensing power, but lies rather in a petition for a writ of certiorari to review the proceedings of the selectmen upon a proper and adequate return by them."

The petitioner seeking relief by a writ of certiorari has the burden of showing on the face of the record that the denial of his application was due to an error of law by the board. *Kidder* v. *City Council of Brockton*, 329 Mass. 288, 289. There is no burden on the board to justify its denial, and it was under no duty to state reasons for its denial. *Johnson Prod. Inc.* v. *City Council of Medford*, 353 Mass. 540, 543, app. dism. and cert. den. 392 U. S. 296. *Davidson* v. *Selectmen of Duxbury*, 358 Mass. 64, 66. In short, it is not sufficient for the petitioner to contend that the board could have decided in his favor but decided in favor of DeFelice instead. The mere fact that the board could have granted the application if, in its discretion, it desired to do so, does not mean that its refusal to do so was "arbitrary and capricious, and abuse of discretion constituting error of law," as ruled by the judge. Such a ruling ignores and destroys the board's right to exercise the discretion vested in it. *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277–278. *Malcomb* v. *Board of Appeals of Southborough, ante*, 887.

On April 27, 1970, the board was required to take action on two applications for use of the same premises "as a garage or repair shop for automobiles." One was from DeFelice who was already conducting operations on the premises under a used car license. The other was from the petitioner, a doctor, who proposed a specialized type of automobile repair shop. The two were competing for a single license for the same premises. A number of advocates or supporters for each of the applicants appeared and spoke before the board. There was nothing which disqualified either applicant as matter of law, or which compelled the granting of a license to either applicant as matter of law. The board had discretion to deny both applications, or to deny one and grant the other. It exercised that discretion by denying the application of the petitioner and granting that of DeFelice. This court cannot, without usurping the power and authority of the board, reverse the board's action and order that it issue a license to the petitioner, and we do not do so. The petitioner is of course at liberty to make a new application to the board in view of the fact that DeFelice does not now appear to be occupying the premises. It is for the board, and not for the court, to determine whether to exercise its discretion to issue a license to the petitioner under these changed circumstances. The order for judgment is reversed. Judgment dismissing the petition is to be entered. The board is to have costs of appeal.

*So ordered.*