McDONALD'S CORPORATION *vs.* BOARD OF SELECTMEN OF RANDOLPH. January 21, 1980. By its action in the nature of certiorari, McDonald's Corporation (McDonald's) challenged the denial by the Randolph board of selectmen (board) of a common victualler's license (G. L. c. 140, § 2) for a proposed restaurant in a shopping center located in that town. The board did not state any reason for its denial, did not maintain a record of its proceedings suitable for judicial review and made no return of the proceedings in its answer. In the Superior Court the board assigned three reasons for the denial: (1) that McDonald's could not provide sufficient parking for the restaurant consistent with the board's interpretation of the parking provisions in the local zoning by-law; (2) that the proposed facility would cause increased traffic, which in turn would endanger students attracted to the restaurant from a nearby high school; and (3) that suitable plans depicting the restaurant's interior layout had not been filed as required by G. L. c. 140, § 6. The trial proceeded on the basis that the judge would take a view and determine on all the evidence, expert and otherwise (most of which had not been presented before the board), whether any of the board's assigned reasons justified its action. The judge made findings and ruled that the denial of the license was arbitrary, capricious and unreasonable, and ordered the license to issue subject to terms and conditions ordinarily imposed by the board on similar licenses. Based on the record created at the trial, the parties agree that we are to review the case under the standards set forth in Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). See *Neponset Reservoir Corp.* v. *Bashaw*, 8 Mass. App. Ct. 35, 36 (1979), and cases cited. We review the case on that basis. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 757-758 (1976).

1. The board incorrectly interpreted and applied the town's zoning by-law in determining that the area leased for the restaurant constituted a separate lot which required parking on the lot itself for all its patrons. The lease between McDonald's and the owners of the shopping center provides the plaintiff with rights in the joint facilities of the center for parking purposes. The evidence was undisputed that the common parking lot contained adequate space for the parking requirements of all the shopping center's occupants. The parking requirements for joint facilities contained in § 6(p) of the by-law therefore apply. Because the proposed restaurant would meet these requirements the judge correctly ruled that the board's first assigned reason for denying the license was erroneous as matter of law.

2. The judge's findings that the restaurant would not cause increased traffic and would not materially hamper or interrupt traffic flow in the area, thereby posing a threat to the safety of the high school students, are amply supported by the evidence. There was evidence that the shopping center had been built with full knowledge that the high school, a fire station and other public facilities were nearby. There was evidence that the center had originally contained two sizeable "lead" stores, one of which (Grant's) had drawn heavier traffic than was currently using the center's access road. Grant's had maintained a restaurant previously licensed by the board. There was also evidence that the shopping center contained a separate restaurant which had been licensed, as well as an eating establishment in the remaining lead store. Another fast food restaurant (Burger King) was located approximately 900 feet away from the high school on the same road that would service McDonald's. McDonald's proposed site was in a relatively empty corner of the shopping center. There was also evidence that peak hours at the plaintiff's restaurant would not coincide with the arrival or departure of the buses at the high school and that police were assigned to traffic duty at those times. Further, it was significant on the safety claim that traffic signals had been approved for a site near the school some six years prior to McDonald's application but had never been installed. There was evidence that the accident rate in the vicinity was average to low and that most accidents were minor property damage cases occurring within the confines of the shopping center. Finally, there was evidence that because the shopping center was not near a major highway the proposed restaurant would not draw additional traffic, but rather would serve those already in the immediate area on other business. In view of this evidence we conclude that the judge did not err in rejecting the board's second reason for denial of the license.

3. From the scant information appearing in the record we are satisfied, as was the judge, that the board had received sufficient documentation from McDonald's to show adequate compliance with G. L. c. 140, § 6, either by way of plans submitted at the board's initial hearing on the application or through information conveyed to the board prior to the hear-

ing by other municipal departments involved with the plaintiff's proposal. As a consequence, the judge did not err in impliedly denying the defendant's requested ruling as to the applicability of G. L. c. 140, § 6, as support for denial of the license.

4. While we realize that a local board sitting as a licensing authority generally has considerable discretion to deny a license, and that a judge cannot substitute his or her judgment for the board's on a discretionary matter, it is nonetheless true that "[a] board which has power to grant or withhold a permit must decide 'in a fair, judicial and reasonable manner upon the evidence as presented . . . keeping in mind the objects' of the applicable regulation." *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 553 (1959), quoting from *Butler* v. *East Bridgewater*, 330 Mass. 33, 38 (1953).

As stated in a leading case on the subject, an aggrieved applicant for a common victualler's license can prevail where it demonstrates that the licensing authority "in refusing to grant the license . . . [has] proceeded upon grounds erroneous in law or [has] otherwise violated legal rights of the [applicant]." *Liggett Drug Co.* v. *License Commrs. of No. Adams*, 296 Mass. 41, 44 (1936), and cases cited. On the record created at the trial the judge properly concluded that the reasons advanced by the board were groundless or otherwise legally erroneous. However, instead of ordering the license to issue he should have followed the appropriate practice of remanding the matter to the board for further proceedings. The judgment is vacated. A new judgment is to be entered (a) annulling the board's decision, and (b) directing the board to hold such further proceedings as may be necessary on the plaintiff's application, and reconsidering that application in the light of this opinion. On reconsideration the board may request that the plans called for by G. L. c. 140, § 6, be updated. The Superior Court is to retain jurisdiction of the case.

*So ordered.*

*William J. Carr*, Town Counsel, for the defendant.
*Joseph R. Welch* for the plaintiff.