## Hood Industries, Inc., & another[1] vs. City Council of Leominster.

Worcester. January 22, 1987. — March 16, 1987.

Present: Perretta, Cutter, & Kass, JJ.

*Administrative Law,* Proceedings before agency, Hearing. *License. Fire Prevention. Municipal Corporations,* City council.

In an action in the nature of certiorari, seeking judicial review of a city council's decision denying an application under G. L. c. 148, § 13, for a license to store flammable chemicals in connection with manufacturing activities on the applicant's premises, the judge, in denying relief, correctly concluded that it was appropriate for the council, acting as the city's licensing body, to deal with the application in light not only of fire-prevention problems, but of other broadly applicable public safety and welfare considerations as well; that it was not improper for members of the council, a political body, to seek information and opinion outside the context of the council's formal hearing on the application; that there had been no conduct on the part of the council sufficient to rebut the presumption that its members had acted honestly and with appropriate motives; and that the council's action was supported by sufficient evidence and was neither arbitrary nor capricious. [648-650]

In denying an application under G. L. c. 148, § 13, for a license to store flammable chemicals, a city council, acting as the city's licensing body, proceeded properly in weighing broadly applicable public safety and welfare considerations, and made no unauthorized economic decision between the applicant's special needs and the competing interests of other industrial concerns and business companies. [650-652]

Civil action commenced in the Superior Court Department on August 9, 1985.

The case was heard by *George C. Keady, Jr.,* J.

---

[1] Bruce G. Hood, trustee of B.G.H. Realty Trust. For convenience the Hood Corporation and the realty trust are treated as one entity and referred to as Hood because they appear to have the same interests. Hood had undertaken its enterprise with the encouragement of the then mayor of Leominster and of the regional chamber of commerce.

*Paul M. Lynch* (*Frances E. Rafferty* with him) for the plaintiffs.

*John J. Curley, III,* City Solicitor, for the defendant.

CUTTER, J. Hood Industries, Inc. (Hood), is a manufacturer of polyurethane foam and products fabricated from the foam. B.G.H. Realty Trust owns about 403,000 square feet of land (the locus) in Leominster in an industrial zone (where the manufacture of foam is permitted as of right). Hood occupies a building on the locus with a floor area of about 240,000 square feet. Hood plans to use the building on the locus for its manufacturing process.

There had been issued to Hood by the Leominster fire department prior to June 24, 1985, a permit to store not more than 1,665 gallons of class C liquids as defined in regulations of the Board of Fire Prevention Regulations (G. L. c. 22, § 14), found in 527 Code Mass. Regs. §§ 14.02-14.03 (1981), including Toluene Diisocyanate (T.D.I.), with a flash point of over 187 degrees Fahrenheit and therefore regarded as a relatively low fire risk.

Hood applied to the Leominster city council (the city's licensing body for this purpose, see G. L. c. 148, § 1, as appearing in St. 1953, c. 230, § 1, defining "local licensing authority") for a license to store substantially larger amounts (45,600 gallons for the present) of class C fluids. All procedural preliminary formalities were complied with so that a hearing on the application (endorsed in behalf of the city's fire department) was held before the legal affairs committee of the council on June 24, 1985. At this hearing a variety of witnesses spoke against the license stirred by widespread local opposition to the storage of T.D.I. on the locus, to the toxic character (with various serious health risks) of T.D.I., and to the risk of spills when chemicals and products were being taken to the locus.

Much was made of the circumstance that the locus was not far from a "heavy" residential area and from a nursing home and a school. There was reference in the hearing to what was represented as Hood's allegedly poor "track record" at its plant in another community. Counsel for the objectors said in his opening to the committee, "There is more than just flammables

involved here. We are involved with the storage of toxic dangerous chemicals."

The legal affairs committee voted informally to report to the council adversely to Hood's application. The chairman of the legal affairs committee so reported and the full council voted unanimously to deny the permit.

Hood then brought in the Superior Court an action in the nature of certiorari. See G. L. c. 249, § 4; Mass.R.Civ.P. 81(b), 365 Mass. 841 (1974). This was heard on November 20 and 22, 1985, before a Superior Court judge. He made findings on February 25, 1986, affirming the city council decision to deny the requested license. Hood appealed. Hood's motions to amend the findings were denied.

The principal contention made by Hood before us is that the city council was not authorized under G. L. c. 148, § 13, to consider any issues other than that of the flammability of the class C substances to be stored by Hood and the danger of fire which would result from the storage of these substances in the quantities for which a license was requested. For essentially the reasons stated by the trial judge (and largely on decided cases cited by him) we affirm his decision.

The judge found the facts essentially as already stated in this opinion. He had before him at least the portions of the transcript of the hearing before the city council and its legal affairs committee which appear in the record furnished to this court by Hood's counsel. He listed (as we have done) considerations which he recognized the council ("a political body") took into account in its consideration of Hood's application, and which entered into the council's ultimate vote. He concluded that there was nothing "arbitrary, whimsical[,] or capricious about the . . . denial of [Hood's] application."

The judge also found no "evidence that . . . [Hood was] treated unequally under the law. There are other plastic fabricators in the same area where . . . [Hood is] located. Although many of them store liquids which are rated as class A [more flammable than class C] chemicals, this application . . . was the first of its kind for the storage of this chemical of the class C variety. . . . [S]ome council members inspected the . . . [Hood] facilities."

The judge found further that the record did not disclose "any confusion on the part of the members of the city council or on the part of any municipal officials reporting to them." For the "members [of the council] to consider constituent input and opinion is not contrary to the law. . . . There is no evidence here that the hearings were abbreviated" or that the council members were "improperly predisposed to deny the license sought by" Hood. "[M]embers of the [c]ouncil were investigating the subject matter of the application weeks before . . . the hearings. At least one council member was disposed against the application before the hearings commenced." On the night of the hearings he cast his vote to deny the license.

On these findings the judge correctly ruled that it was not improper for members of the council "to seek information outside . . . the formal hearing, [citing *Craven* v. *State Ethics Commn.*, 390 Mass. 191, 196-199 (1983)] or to be sensitive to constituents' pressures or to come to the hearing with a preference as long as no improper motivation such as extraordinary allegiance or monetary gain is present."

The judge concluded reasonably that the council had the benefit of a presumption that they were acting honestly and with appropriate motives. See *Foster from Gloucester, Inc.* v. *City Council of Gloucester,* 10 Mass. App. Ct. 284, 293-294 (1980). Examination of the hearing transcript does not indicate that counsel for Hood were refused permission to present any testimony or arguments which they wished to offer, or that they objected to any testimony which was offered by others, or that they sought to cross-examine any witnesses opposing the license.[2] Hood's principal representative was afforded

---

[2] In the absence of an attempt by Hood's principal counsel to offer testimony (other than his own), to object to testimony, or to seek to cross-examine hostile witnesses, there is no occasion for us to consider whether if they had made any such attempt and had been denied the opportunity, Hood would have been deprived of a proper hearing upon the issue of *granting* a license (as contrasted with a hearing upon a license revocation or upon an alleged violation of the terms of a license).

As the trial judge noted, "impatience, discourtesy, or bad manners do not invalidate a decision or require the abrogation of a decision provided the essentials of sound judicial conduct are not violated," citing *Ott* v.

opportunity for rebuttal and to answer questions from various council members. We perceive, in the circumstances, no conduct on the part of the council sufficient to rebut the presumption of regularity.

The judge also concluded that the council's action was supported by sufficient evidence and was neither arbitrary nor capricious. In respect of fire prevention, the breadth (a) of a licensing power of this type and (b) of the considerations which may be brought to bear on the licensing body are illustrated by the following decisions. See *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 376-377 (1941, "public interest"); *Kidder* v. *City Council of Brockton,* 329 Mass. 288, 290-291 (1952, traffic congestion); *Johnson Products, Inc.* v. *City Council of Medford,* 353 Mass. 540, 543 (1968, "the somewhat wide discretion given to the licensing authority extends beyond . . . fire risk and involves other [public interest] considerations" and testimony under oath is not required), appeal dismissed and cert. denied, 392 U.S. 296 (1968); *Bennett* v. *Aldermen of Chelsea,* 361 Mass. 802, 806-808 (1972, discussion of the breadth of discretion of the licensing authority); *Davidson* v. *Selectmen of Duxbury,* 358 Mass. 64 (1970, residential area, narrow street, traffic congestion). See and compare *E.A.D. Realty Corp.* v. *Selectmen of Shrewsbury,* 6 Mass. App. Ct. 826, 827-828 (1978), and cases cited. See also *St. James Bldg. Corp.* v. *Commissioner of Public Safety,* 260 Mass. 548, 552-556 (1927), and the general discussion in *Withrow* v. *Larkin,* 421 U.S. 35, 51-59 (1975).

We perceive no inconsistency in the conclusion which we reach with *Tebo* v. *Board of Appeals of Shrewsbury,* 22 Mass. App. Ct. 618, 626-631, further appellate review granted, 398 Mass. 1105 (1986). In that case this court viewed a regulation (restricting blasting within stated distances of a microelectronic manufacturing operation) adopted by the Board of Fire Prevention Regulations as beyond the authority thus far given to that board by the Legislature under G. L. c. 148, § 9. This court said

*Board of Registration in Medicine,* 276 Mass. 566, 574 (1931). Although views were expressed vigorously, the transcript of the hearing does not show basis for invalidation of the council's decision.

(at 629), "The fire board's writ to promulgate safety regulations of general applicability is surely very broad. Our difficulty with the regulation in question is that it does something quite different from protecting against hazard in the conventional sense. It proscribes blasting in certain locations *irrespective of safety concerns*. The blasting may threaten no lives, cause no rocks to fly, and impair no buildings. It is enough that it is within a certain distance of an occupation that wants a high degree of protection from vibration and dust" (emphasis supplied).

The opinion recognized (at 629) that "the insulation of calibration equipment from vibration is a form of protection of property," but (at 629-630) that what the "regulation does is to favor one form of economic activity, manufacture of microelectronic components, over another form of economic activity, quarrying rock and grading land for development. It is quite apparent that economic choice, rather than safety, underlies the regulation."

The opinion then pointed out (at 630) that "[i]t is not a question of the rationality of the choice. We are aware that high technology is of long term economic importance to Massachusetts. There is more future in microchips than rock chips. The Legislature could rationally decide that the public interest requires a limitation on blasting activity, even though safety considerations are not implicated. The Legislature could delegate to an administrative agency, the fire board or some other agency, the formulation of rules and regulations which will govern the making of such an economic choice." The decision in the *Tebo* case was that the Legislature had not yet conferred upon the board the authority to choose.

No such issue is presented here. Safety from fire hazards is the basic question with the storage of flammables. That question, under our decisions, is to be dealt with by the city council not only in the light of fire prevention problems but also with appropriate weighing of other broadly applicable public safety and welfare considerations. No unauthorized economic decision between Hood's special needs and the competing interests

of other industrial concerns and business companies was directly involved in the present controversy.

*Judgment affirmed.*