McDONALD'S CORPORATION *vs.* TOWN OF EAST LONGMEADOW & others.[1] April 16, 1987. *Practice, Civil,* Relief in the nature of certiorari. *License. Common Victualler. Municipal Corporations,* Officers and employees. *Conflict of Interest.*

The plaintiff brought an action in the Superior Court combining claims in the nature of mandamus to compel the building inspector of East

---

[1]The selectmen and the building inspector of the town.

Longmeadow to issue a building permit and in the nature of certiorari to review the denial by the town's board of selectmen of a common victualler's license. At trial, all parties agreed that the building permit should have been issued. Final judgment entered ordering the issuance of a permit and affirming the decision denying the common victualler's license. The plaintiff appeals from the order denying the license. We affirm.

1. The judge heard evidence beyond the matters which had been brought before the board. This may have occurred because the proceeding involved both an action in the nature of mandamus and one in the nature of certiorari. We note that in so far as review of the board's denial of a license is concerned, such review (action in the nature of certiorari) should have been confined to correcting substantial errors of law that "are apparent on the record." *Debnam* v. *Belmont,* 388 Mass. 632, 635 (1983). The record means the proceedings before the selectmen. The only evidence to be considered is evidence which formed the basis of the board's action — not evidence newly brought before the judge. See *Bennett* v. *Aldermen of Chelsea,* 361 Mass. 802, 805-806 (1972); *Hershkoff* v. *Reigstrars of Voters of Worcester,* 366 Mass. 570, 574 (1974); *Selectmen of Sterling* v. *The Governor,* 2 Mass. App. Ct. 597, 599 (1974), *S.C.,* 368 Mass. 814 (1975). Cf. *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph,* 19 Mass. App. Ct. 296, 303-304 (1985).[2] Accordingly, we shall confine our review, except in our discussion of point 3 below, which involves a challenge to the procedural integrity of the decision, to the return (answer) of the selectmen. See *Stetson* v. *Selectmen of Carlisle,* 369 Mass. 755, 757 (1976).

2. In denying the license the board gave the reasons set forth in the margin.[3] McDonald's claims that the board considered factors which are not connected with the preparation and delivery of food, see G. L. c. 140 §§ 2, 6, and that the reasons were not supported by evidence. It urges, for example, that the number of twenty-two licenses deemed sufficient was determined arbitrarily and without any studies. We agree with the trial judge that McDonald's has not shown the decision was arbitrary or capricious,

---

[2] Compare *McDonald's Corp.* v. *Selectmen of Randolph,* 9 Mass. App. Ct. 830 (1980), in which evidence was taken by the trial judge. In that case, however, there was no administrative record.

[3] "The applicant has offered no evidence of the need for the new establishment on North Main Street, nor that the good of the Town of East Longmeadow requires it, and the Board finds that the need does not exist, and the License and Permit would not be for the good of the Town.

"An expression of protest of the restaurant is reflected in the petition bearing 600 names, and delivered to the Selectmen. The Board finds that with regards to need, that there are already 22 Common Victualler's Licenses in this small Town. The Springfield McDonald's is but a short distance away.

"In making its decision the Selectmen have also considered the potential for increased traffic particularly during peak hours on North Main Street which is the Town's main thoroughfare, and the immediacy of the proposed location to the public park and the resulting negative concerns as to pedestrian safety and adequate disposal of waste."

see *Newbury Junior College* v. *Brookline,* 19 Mass. App. Ct. 197, 202 n.7 (1985), and cases cited, or infected with other legal error.

"The breadth of discretion which local authorities enjoy in granting or denying licenses varies. In the case of common victualler licenses . . . for example, town and city boards may exercise judgment about public convenience and public good that is very broad indeed." *Id.* at 202. *Liggett Drug Co.* v. *License Commrs. of N. Adams,* 296 Mass. 41, 50-53 (1936). See *Great Atlantic & Pacific Tea Co.* v. *License Commrs. of Springfield,* 387 Mass. 833, 839 (1983). There is no question that the board may consider the number of licenses already granted in determining the public good. As pointed out in *Liggett Drug Co.* v. *License Commrs. of N. Adams, supra* a 50, "The requirement of the 'public good' as the standard by which to measure the number of such licenses to be granted runs through the statutes on this subject for more than a century." The board was not required to make studies to determine the number of licenses to be issued. The board members, local residents of the town, were aware of local patron needs, took a view, and noted that there were fifteen restaurants along route 83. The board also properly considered the proximity of another McDonald's.

In particular, McDonald's challenges the board's consideration of public sentiment, traffic, and litter. There was widespread opposition to the grant of the license at the board's hearing. This was in large part because of the "traffic danger to children in the nearby park." The board's return sets forth these concerns of the town's residents as expressed at the public hearing.

While the board's decision appears to be based primarily on the lack of a need for an additional license, the board also took these other considerations into account. See note 3, *supra.* These "ancillary and contributing reasons," even if not sufficient in themselves to warrant a denial of license to McDonald's, "did not vitiate the action of the [board]." *Liggett Drug Co., supra* at 48. Moreover, similar considerations affecting the "public good" although not specifically related to the concerns enumerated in the licensing statute or ordinance have been upheld by the Supreme Judicial Court and this court. See, e.g., *Kidder* v. *City Council of Brockton,* 329 Mass. 288, 290-291 (1952) (denial of license to operate automobile service station not arbitrary or whimsical where board took into consideration such factors as the traffic risk to children and public opposition to the license indicating that there was no countervailing public demand for another station); *Hood Indus., Inc.* v. *City Council of Leominster,* 23 Mass. App. Ct. 646 (1987) (council not limited to fire prevention problems but could appropriately weigh other broadly applicable public safety and welfare considerations [at 651], and could even "be sensitive to constituents' pressures" if there was not improper motive [at 649]). See also cases cited at 650 and *McDonald's Corp.* v. *Selectmen of Randolph,* 9 Mass. App. Ct. 830, 831 (1980), where traffic considerations were taken into account.

As observed by the trial court in relying on and quoting from *Liggett Drug Co., supra* at 50: "The licensing authorities are not . . . required to grant any licenses to common victuallers. Whether any such licenses shall be granted and, if any, the number to be granted rest in the sound judgment of the licensing board as to the demands of the public welfare in the respective communities." See also G. L. c. 140, § 2. There was here no basis on the record to disturb the board's decision.

3. One of the selectmen disqualified himself from voting because he was employed by Friendly's Corporation. McDonald's, a competitor of Friendly's, asserts that the selectman's participation in speaking against the application and chairing the board's meeting was a violation of G. L. c. 268A, § 1. Although such participation may have been inappropriate, see G. L. c. 268A, §§ 1(*j*) and 19, the trial judge, on the basis of testimony of the other two selectmen, concluded that the facts did not warrant a finding that the selectman's "affiliation with Friendly Corporation constitutes a conflict of interest which tainted the . . . decision." That finding was not clearly erroneous and is consonant with applicable law. G. L. c. 268A, § 21(*a*), inserted by St. 1962, c. 779, § 1 (agency action may be invalidated if violation "substantially influenced the action taken"). See *Sciuto* v. *Lawrence,* 389 Mass. 939, 942-943 & n.6 (1983).

*Judgment affirmed.*

*F. Michael Joseph* for the plaintiff.
*John J. Lang* for the defendants.