Welch, J.
The plaintiff operates an International House of Pancakes (“IHOP”) on Route One in the Town of Saugus, Massachusetts. The Town issued a common victualer’s license to the plaintiff pursuant to G.L.c. 140, §2 with the condition that the hours of operation for this IHOP restaurant be restricted to 6:00 a.m. to 1:00 a.m. The plaintiff restaurant insists that it is entitled to operate 24 hours per day and that the Town does not have the authorily under chapter 140 to condition its grant of a common victualer’s license by specifying the hours of operation.
Both sides agree that no disputed issues of fact exist as to the declaratory judgment relief requested in the complaint.[1] For example, both sides agree that the plaintiff operates an IHOP restaurant on Route One in Saugus and that the Board of Selectmen for the Town of Saugus (the licensing authority for that town) were authorized to issue a common victualer’s license and did issue such a license to the plaintiff for the period January 1, 1997 through December 31, 1997. Both sides also agree that the license contains a notation limiting the hours of operation of the IHOP restaurant to “seven days a week 6:00 a.m. to 1:00 a.m.” Both sides also agree that, on January 14,1997, the plaintiff requested the Board of Selectmen to delete the restriction of hours contained on the face of the license and that the Board of Selectmen declined to do so, citing opposition from the neighborhood concerning the hours. Finally, the parties agreed that the restaurant is operating at the location contained in the license and is adequately equipped with sufficient implements for preparation and service of food, makes food available for strangers and travelers, and is being operated in conformance with all health and safety laws. The only dispute at issue concerns the allowable hours of operation.
This matter primarily turns upon an interpretation of section 2 of chapter 140. That section provides that the Board of Selectmen “may grant licenses to persons to be . . . common victualer’s ...” The section also specifies that the licensing authority need not grant such a license “if, in their opinion, the public good does not require it. . .” Other sections of the chapter provide that the license must specify that particular building where the business is carried out; a provision that the common victualer “shall at all times be provided with suitable foods for strangers and travelers"; that the common victualer have upon his premises all necessary implements and facilities for cooking, preparing and serving food; and a provision providing for revoking of the license if the business is conducted in an improper manner. The plaintiff does not dispute that the Board of Selectmen have considerable discretion as to whether or not to grant a common victualer’s license. The plaintiff vigorously argues, however, that this discretion is limited to whether or not to grant the license and does not include the power to specify, particular hours of operation.
It is true that chapter 140, section 2 does not mention explicitly any authority of the licensing authority to condition the grant of the common victualer’s license upon certain conditions (such as hours of operation). The plaintiff argues that this Court need not look beyond the words of the statute where the language is plain and unambiguous. See Leary v. Contributory Retirement Appeal Board, 421 Mass. 344, 345 (1995). Because the statute contains no provision explicitly permitting the conditioning of the grant of a common victualer’s license, the plaintiff *88 argues that this Court need only look at the language and apply it. Indeed, the plaintiffs argument of literal application of the statute goes so far as to cite Section 5 of chapter 140 which provides that a common victualer “shall at all times be provided with suitable food for strangers and travelers." Applying this section with absolute literalness, the plaintiff argues that IHOP is merely abiding by the explicit terms of the statute by being open 24 hours a day, i.e. “at all times.” Thus, according to the plaintiffs argument, any restaurant that fails to be open 24 hours a day is an apparent violation of the literal terms of chapter 140. This argument shows the damages that lurk whenever one adheres religiously to a tenant of statutory construction.
The difficulty of statutory interpretation lies not in espousing general principles, such as adhering to “plain and unambiguous” language, but in actually applying these general principles to the actual statute at issue in the context of the case. Obviously, the object is to attempt to effectuate the legislative purpose. This case presents the paradigm of where the court is confronted with a statutory gap in which the legislature has not spoken. The issue, put simply, is whether the legislature intended not to give the licensing authority the ability to condition a common victualer’s license in regards to hours (and, thus, intentionally remained silent) or whether the legislature simply failed to consider this issue but, to effectuate the legislation’s purpose, the legislature plainly would have provided the licensing authority the power to condition such a license in order to effectuate the full purpose of the statute.
Both sides have strong arguments in this regard. The legislature plainly had the ability to explicitly provide the power to the.licensing authority to condition hours. After all, this is precisely what the legislature did when it provided the authority for local licensing boards to issue alcohol beverage licenses. See, e.g., G.L.c. 138, §§12, 15. Chapter 140 is relatively well detailed and precise and, thus, the omission of a power to condition a license relating to hours may be considered purposeful. Cf. Leary v. Contributory Retirement Appeal Board, 421 Mass. 344, 348 (1995); Fontaine v. Ebtec Corp., 415 Mass. 309, 321 (1993). On the other hand, it has long been held that licensing authorities possess a very wide breadth of discretion in deciding whether to grant or deny common victualer’s licenses. See Liggett Drug Company v. License Commissioners of North Adams, 296 Mass. 41 (1936). Indeed, the Board of Selectmen are entitled to deny such a license if they have a reasonable basis to conclude that the Town already has a sufficient member of similar eating establishments. As the Massachusetts Appeals Courthas held: “The breadth of discretion which-local authorities enjoy granting or denying licenses varies. In the case of common victualer’s licenses, for example, town and city boards may exercise judgment about public convenience and public good that is very broad indeed.” Newbury Junior College v. Brookline, 19 Mass.App.Ct. 197, 202 (1985). See McDonald’s Corporation v. Town of Easton Long Meadow, 24 Mass.App. 904, 906 (1987). As a corollary to this broad discretion to grant or deny a common victualer’s license, it makes a good deal of sense to interpret the broad power as allowing the licensing authority the ability to grant such a license but with certain reasonable conditions. Nevertheless, the parties do not cite and the court has not found any authority relating to the conditioning of a common victualer’s license.
Of corarse, whether it makes common sense and good public policy to allow a licensing board the option of granting such a license with conditions as opposed to utilizing their broad discretion to deny the license all together, is an issue more appropriate for a legislature than a court in our democratic society. While a court is entitled to utilize its common law powers to interpret within the statutory interstices, this appears to be a case in which the legislature has passed a relatively detailed statute concerning common victualer’s licenses and has declined to grant them the power to condition such a license. The situation that has arisen, i.e., the limiting of a restaurant’s hours, was hardly unforeseeable in that the legislature addresses such issues in the alcohol license provisions. Thus, the plain wording in the statute does not give the authority to the Board of Selectmen to condition a common victualer’s license in terms of hours of operation.
This Court concedes that this interpretation promises some unfortunate consequences. It is perfectly understandable why the Board of Selectmen would wish to limit the hours of certain restaurants, particularly those restaurants (such as IHOP) that are near residential areas. Given the teaching of such cases as McDonald’s Corporation v. Town East Long Meadow, 24 Mass.App. 904 (1987), the Board of Selectmen could plainly deny outright a common victualer’s license to a restaurant (upon an initial application or upon a request for renewal) which insisted on being open 24 hours a day in a location which the Board of Selectmen had a reasonable basis to believe would be inappropriate to a 24-hour restaurant. Likewise, the Board could deny such a license if it reasonably believed the Town already had a sufficient number of such 24-hour eateries.[2] Liggett Drug, supra at 50. Under the current statutory language, the Board of Selectmen appears to be required to use this statutory blunderbuss of a complete denial as opposed to a more finely tuned weapon which could permit a license to issue with certain reasonable conditions.
Therefore, this Court is compelled to grant the plaintiffs motion for partial summary judgment. Given the Court’s ruling, the plaintiffs remaining claims relating to an inappropriate denial of the request to operate on a 24-hour basis are moot. Judgment to enter for the plaintiff.

 The plaintiffs also assert that, even if the Town was authorized to condition the license, that the Town acted in an arbitrary, capricious, and bad faith manner in so restricting the hours. That issue is not before the court at this time. Both *89 sides agree that disputed issues of fact exist as to that remaining dispute.

 “The licensing authorities are not . . . required to grant any licenses to common victualers. Whether any such licenses shall be granted and, if any, the number to be granted rest in the sound judgment of the licensing board as to the demands of the public welfare in the respective communities.”